## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                                          )
**MAHER M. ASFOUR and PLYMOUTH**    )
**BAY ROBBINS, LLC,**                            )
                                                          )
     **Plaintiffs,**                              )
                                                          )    **Civil Action No.**
     **v.**                                          )    **16-11732-FDS**
                                                          )
**CITIZENS BANK, N.A,**                        )
                                                          )
     **Defendant.**                             )
_____)

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

     This action arises out of a homeowner's default on a mortgage obligation. In July 2008, plaintiff Maher Asfour took out a $600,000 loan from defendant Citizens Bank, N.A., in order to purchase his residence. In 2011 or 2012, he defaulted on the loan. Citizens is now attempting to foreclose on the property. The nine-count complaint alleges, in substance, that Citizens failed to comply with proper procedures under Massachusetts law to foreclose.

     Citizens has moved to dismiss the complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the motion will be granted.

## I.    Background

### A.    Factual Background

     Except as where noted, the facts are set forth as alleged in the verified complaint and the attached exhibits.

     Maher Asfour resides in a condominium located at 60 Robbins Road, Unit 10 in

1

Plymouth, Massachusetts ("the property").  This address is also the business address of Plymouth

Bay Robbins, LLC ("PBR"), a limited liability company.  (Compl. ¶ 1-2).  Public records

indicate that Asfour is the sole member of PBR.  (Docket No. 6-1, Certification of Organization

of Plymouth Bay Robbins ¶ 8).

On July 11, 2008, Asfour received a loan from defendant Citizens Bank, N.A., for

$600,000 to purchase the property.  (Compl. ¶ 5).[1]  The loan was secured by a mortgage on the

property.  (*Id*. ¶ 8).  The current record titleholder for the property is PBR, not Asfour.  (*Id*. ¶ 1).

The circumstances under which that transfer occurred are not clear from the complaint; the bank

contends that the transfer violated the terms of the mortgage.

Asfour is self-employed as a real-estate developer.  (*Id*. ¶ 6).  In either 2011 or 2012,

Asfour stopped making the payments due on the loan.[2]

## 1.    <u>First Modification Request</u>

On January 19, 2013, Asfour requested a loan modification.  (Compl. ¶ 8).  Citizens

denied the request because his monthly income was too low.  (*Id*.).  According to the complaint,

Citizens relied on Asfour's reported cyclical income in making that determination, which was

low, and "ignored Asfour's real income from his self-employment business."  (*Id*.).  Asfour

contends that Citizens came to that conclusion despite the fact that it had granted the original

mortgage based on the same income.  (*Id*.).

## 2    <u>Plaintiff's Illness</u>

In October 2013, Asfour was given a diagnosis of colon cancer.  (Compl. ¶ 9; Ex. C).  He

---

[1] At the time the loan originated, defendant was known as RBS Citizens, N.A.

[2] The complaint alleges that Asfour continued to pay his mortgage until 2012.  (Compl. ¶ 8).  This statement is contradicted by a letter attached to the complaint from Citizens to Asfour that states that the loan went into default on February 1, 2011.  (Ex. M).

has since undergone chemotherapy treatment and multiple surgeries to treat the illness.  (Compl.

¶ 9).  The cancer and treatment cause Asfour fatigue and are sometimes "debilitating."  (*Id*. ¶ 11;

Ex. C; Ex. M).

### 3.     Second Modification Request

On July 23, 2014, Citizens sent Asfour two notices:  a 150-day right-to-cure default

notice and a notice informing him that he was eligible to request a modification of his mortgage.

(Compl. ¶ 12; Ex. D).  The mortgage modification notice included a form entitled "Mortgage

Modification Options," which required Asfour to indicate by August 22, 2014, whether he

wished to pursue a mortgage modification.  (Ex. D).

On August 15, 2014, Asfour returned the form, having checked a box indicating that he

was requesting a loan modification and attaching documents describing his income, assets, and

debts.  (Ex. E).  Along with the form, Asfour sent a letter stating that due to his illness, the form

was only "partially completed."  (*Id.*)  The letter further requested that he receive an additional

90 days to request a modification and to cure the default.  (*Id.*).

On October 9, 2014, Citizens sent Asfour a letter requesting that he submit additional

documents by November 8, in order to evaluate whether he qualified for loan modification.  (Ex.

F).  On October 30, Asfour sent Citizens a letter informing it that he could not meet the

November 8 deadline due to his chemotherapy treatments and the fact that he had a surgery

scheduled for November 14.  (Ex. G).

Asfour sent multiple letters to Citizens informing it of his health status and his continued

desire to pursue a modification.  (Ex. J; Ex. K; Ex. L).

### 4.     Third Modification Request

On May 20, 2015, Citizens sent Asfour an additional 150-day right-to-cure notice

indicating that his past due amount was $271,487.08.  (Compl. ¶ 21; Ex. M).  Asfour continued to update Citizens on his health status.  (*Id.*).

On June 5, 2015, Citizens sent Asfour a letter informing him that it had received his request for "Loss Mitigation Assistance."  (Ex. O).  On June 16, Asfour responded with a letter, stating that he had not submitted a Loss Mitigation Assistance request, and again expressing his intent to pursue a mortgage modification.  (Ex. P).  He stated that he was attaching a mortgage-modification options form, which, again, was only partially completed.  (*Id.*)

On August 17, 2015, Citizens sent Asfour a letter stating that his application for loan modification had been denied.  (Compl. ¶ 25; Ex. Q).  The letter stated that Asfour had failed to provide the necessary documents, despite having been provided with a notice detailing the requirements more than 90 days earlier.  (Ex. Q).

On December 31, 2015, Citizens sent Asfour a letter informing him that it had authorized the initiation of foreclosure proceedings.  (Ex. S).  On January 7, 2016, Asfour responded, stating, "I have every intention of applying for loan modification, however I have been very sick and am currently being scheduled for additional surgery.  I have kept . . . your Bank up-to-date on my health status, as well as my intentions. . . .  Once I have recovered from surgery and deemed not requiring further Chemo Therapy (sic) I expect to be afforded the required 150 days to cure."  (Ex. T).

On July 7, 2016, counsel for Citizens sent Asfour a notice that a foreclosure sale was scheduled for August 9, 2016.  (Compl. ¶ 30).

### B.      Procedural Background

Plaintiffs filed this complaint in Plymouth County Superior Court on August 2, 2016, alleging nine counts under state law.  On August 4, 2016, the state court issued a preliminary

injunction order enjoining Citizens from proceeding with the foreclosure auction until further order of the court.

On August 25, 2016, Citizens removed the action to this Court. Citizens then filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P 12(b)(6).

## II.    Analysis

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

The complaint alleges nine counts against defendant, advancing twelve substantive claims.

A. **Counts One, Eight, and Nine:  Unlawful Foreclosure, Violations of Mass. Gen Laws ch. 244, and Injunctive Relief**

Counts One, Eight, and Nine allege claims for unlawful foreclosure, violations of Mass. Gen. Laws ch. 244, §§14 and 35A, and for injunctive relief to prevent defendant from foreclosing on the property.[3]

1. **Violations of Mass. Gen. Laws, ch. 244, §§ 14 and 35A**

Mass. Gen. Laws ch. 244 requires mortgagees to follow certain procedures prior to foreclosing on a mortgage in default.  Among other things, ch. 244, § 14 requires a mortgagee to publish notice of foreclosure in a newspaper in advance of a foreclosure sale.  Mass. Gen. Laws ch. 244, § 14.  It is not clear from the complaint which allegations are directed toward the purported § 14 violation, and, as no foreclosure sale has occurred or is imminent given the preliminary injunction, it appears no violation has occurred.

Mass. Gen. Laws ch. 244, § 35A requires mortgagees to provide mortgagors with notice of their right to cure default prior to foreclosure.  During the period that notices were being sent to Asfour, § 35A required banks to provide mortgagors with a single 150-day right-to-cure notice.  Mass. Gen. Laws ch. 244, § 35A(b) (amended Jan. 1, 2016).  The notice period could be reduced to 90 days if the mortgagee made a "good faith effort to negotiate a commercially reasonable alternative to foreclosure . . . [including] at least 1 meeting, either in person or by telephone." *Id.*

The complaint alleges that the bank sent Asfour two 150-day right-to-cure notices, on

---

[3] Count One, which begins at paragraph 35, incorporates the facts set forth in paragraphs 1-26 of the complaint.  Compl. ¶ 35.  The operative facts concerning a possible unlawful foreclosure are enumerated in paragraphs 27-34.  For the purposes of this motion to dismiss, the Court assumes that the exclusion of those paragraphs in Count One is the result of a typographical error, and will consider all facts set forth in the complaint to evaluate plaintiffs' claims for unlawful foreclosure.

July 23, 2014 and May 20, 2015.[4]  After the bank informed Asfour that it had authorized foreclosure on December 31, 2015, Asfour responded that he had kept the bank "up-to-date on [his] health status, as well as [his] intentions," and that he expected "to be afforded the required 150 days to cure," after he finished his cancer treatment.  On July 7, 2016, Asfour received notice of the foreclosure sale, which was scheduled for August 9, 2016.  That foreclosure was 749 days from the date of the first right-to-cure notice, and 448 days from the date of the second notice.  Although it is certainly unfortunate that Asfour has experienced substantial health issues during this period, Mass. Gen. Laws ch. 244, § 35A does not require the bank to toll the borrower's right to cure until he is healthy.  In addition, because Asfour was given two 150-day right-to-cure notices and was actually provided with more than two years' notice of his right to cure, Mass. Gen. Laws ch. 244, § 35A did not require defendant to meet with Asfour prior to foreclosing.

Accordingly, the complaint fails to state a claim under Mass. Gen. Laws ch. 244, §§ 14 and 35A.

## 2.    <u>Violation of Servicemembers Civil Relief Act</u>

The complaint further alleges that the bank violated the Servicemembers Civil Relief Act. Under the SCRA, a foreclosure shall not be valid if made during or within one year after a servicemember's military service, except under certain conditions.  50 U.S.C. § 3953.

Plaintiffs' claims under the SCRA fail for multiple reasons.  First, PBR, not Asfour, is the

---

[4] The complaint alleges that "the Bank sent Asfour a '150 day Right to Cure' letter on May 20, 2015," and that the letter "was received on June 4, 2016," without further explanation.  (Compl. ¶21).  Given other typographical errors in the complaint, the Court considers the possibility that this statement is in error and, in fact, plaintiffs received the letter on June 4, 2015.  In any event, the Court accepts the allegation as true that defendant, in fact, sent the letter on May 20, 2015, and that this was the second 150-day right-to-cure notice sent.  Even if Asfour did not receive the second notice until June 2016, the Court's analysis would not change because § 35A requires only one 150-day notice.  *See* Mass. Gen. Laws ch. 244, § 35A.

current record owner of the property and holds the equity of redemption in the property.  Under

Massachusetts law, no SCRA proceedings may be brought "in any case in which the record

ownership of the equity of redemption in the mortgaged property is held by . . . a limited liability

company."  Mass. Acts 1998 ch. 142.

Second, failure to comply with the SCRA does not justify enjoining foreclosure.  *See*

*HSBC Bank USA, N.A. v. Matt*, 464 Mass. 193, 196 (2013) ("a servicemember proceeding is

neither a part of nor necessary to the foreclosure process; it simply ensures that a foreclosure will

not be rendered invalid for failure to provide the protections of the SCRA to anyone so

entitled").   Instead, the lender's failure to comply with its strictures leaves the title vulnerable to

a challenge that the foreclosure was defective after the fact if a mortgagor was covered by the

Act.  *Id.*

In any event, there is no indication that Asfour was or is an active service member.  An

otherwise proper foreclosure is not rendered invalid for failure to comply with the SCRA if the

mortgagor is not entitled to the protection of the Act.  *See Silva v. Massachusetts,* 351 Fed.

Appx. 450, 452 n. 2 (1st Cir. 2009)  ("[b]ecause there is no indication that [the plaintiff] fell

under the protection provided by this federal statute . . . failure to comply with the Massachusetts

procedures implementing the federal relief act had no effect on the validity of the foreclosure.")

(citing *Beaton v. Land Court*, 367 Mass. 385, 305 (1975)).

Accordingly, the complaint fails to state a claim under the SCRA.

### 3.     No Contractual Right to Foreclose

The complaint next alleges that defendant does not have a contractual right to foreclose

on the mortgage.  As support, the complaint alleges that defendant "does not possess the original

wet signed note, nor an original wet-signed assignment of the mortgage."  Compl. ¶ 31.

However, that is not a basis for preventing foreclosure.  Plaintiff has pointed to no statute or case law stating that a foreclosure cannot be conducted in the absence of a "wet signature" note or mortgage assignment.  Accordingly, the complaint fails to state a claim under this theory.

### 4.      Conclusion

The complaint fails to state a claim under any of the theories alleging that the proposed foreclosure is unlawful.  Accordingly, Counts One, Eight, and Nine will be dismissed.

### B.      Count Two:  Breach of Implied Covenant of Good Faith and Fair Dealing

Count Two alleges a claim for breach of the implied covenant of good faith and fair dealing.  In Massachusetts, every contract includes such an implied covenant.  *T.W. Nickerson, Inc. v. Fleet Nat'l Bank,* 456 Mass. 562, 569-70 (2010).  The covenant requires that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract."  *Id.* at 570 (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991)).  The covenant is not, however, meant to be "invoked to create rights and duties not otherwise provided for in the existing contractual relationship."  *Uno Rests., Inc. v. Boston Kenmore Realty Corp.,* 441 Mass. 376, 385 (2004).

The complaint does not allege any specific rights or duties created by the contract that defendant has infringed or avoided.  Instead, Asfour signed a promissory note with defendant and received a $600,000 loan, secured by a mortgage on the property.  According to the complaint, the mortgage has been in default for at least four years.  Under Massachusetts law, defendant is entitled to foreclose on the property.

The complaint also does not allege that defendant's claimed lack of response to his letters "amounted to an 'evasion of the spirit of the bargain.'"  *Larson v. Larson*, 37 Mass. App. Ct. 106, 110 (1994) (quoting Restatement (Second) of Contracts § 205).  The complaint alleges that

Asfour sent defendant multiple letters expressing his intent to apply for a modification and communicating details about his health.  Defendant never responded to those communications and never requested a meeting to discuss modification.

Plaintiffs do not contend that the terms of the contract required defendant to modify the loan, nor to meet to discuss modification.  Furthermore, and according to the complaint, Asfour never completed his second or third requests for a modification.  Rather, for more than a year, he continued to request additional time to submit documents and repeated his claimed intent to apply for a modification.

Under the circumstances, the complaint fails to state a claim that the bank breached the implied covenant of good faith and fair dealing.  Count Two will accordingly be dismissed.

### C.        Count Three:  Misrepresentation, Deceit, and Fraud

Count Three alleges a claim for "misrepresentation, deceit, and fraud."  Those claims require a complaint to plead, among other things, that the defendant made a false representation of material fact or supplied false information.  *See Braunstein v. McCabe,* 571 F.3d 108, 126 (1st Cir. 2009) (stating the elements of negligent misrepresentation); *Eureka Broadband Corp. v. Wentworth Leasing Corp.,* 400 F.3d 62, 68 (1st Cir. 2005) (stating the elements of fraudulent misrepresentation).[5]

The complaint fails to identify a single false statement made by the bank to plaintiffs. Count Three states that the bank "made many false, fraudulent and/or willful misrepresentations of fact, upon which the Plaintiff relied, and as a result of that reliance the Plaintiff was damaged."  Compl. ¶ 41.  However, the complaint is devoid of any specific factual allegations to

---

[5] The claims will be analyzed as a group under the normal Rule 12(b)(6) standard that applies to negligent misrepresentation claims, rather than the heightened standard required for pleading a fraud claim under Fed. R. Civ. P. 9(b).  Because the claims are insufficient under the normal standard, they likewise fail under the more stringent requirements of Rule 9(b).

support that claim.  Accordingly, Count Three will be dismissed.

**D.      Count Four:  Estoppel**

Count Four alleges a claim for "estoppel" without further specification.  Taken in context, it appears that the complaint alleges a claim under a theory of promissory estoppel for failing to modify the loan.  A claim for promissory estoppel must include the following elements: (1) defendant made a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only be enforcement of the promise. *Neuhoff v. Marvin Lumber and Cedar Co.,* 370 F.3d 197, 203 (1st Cir. 2004) (quoting *Carroll v. Xerox Corp.,* 294 F.3d 231, 242 (1st Cir.2002)).

The complaint lacks the critical allegation that the bank ever made a promise to modify the loan.  Instead, the complaint alleges that Asfour first requested loan modification on January 19, 2013, but was denied because his income was too low.  On July 23, 2014, the bank informed Asfour that he may be eligible for loan modification, requested that he indicate whether he wished to apply for modification, and, if so, to provide the necessary documents by August 22, 2014.  In response, Asfour submitted a partial application for a loan modification on August 15, 2014, and requested a 90-day extension to complete the application.  Asfour submitted a third request for a loan modification on June 16, 2015, but again the application was only partially completed.  On August 17, 2015, the bank informed Asfour that his request for a modification was denied for failing to provide requested documents.  There is no allegation that the bank ever promised to modify the loan, or even to give Asfour additional time.  Rather, the bank explicitly refused Asfour's requests for modification twice.  Accordingly, Count Four will be dismissed.

E.      **Count Five:  Negligent Infliction of Emotional Distress Intentional Infliction of Emotional Distress**

Count Five alleges claims for negligent infliction of emotional distress and intentional infliction of emotional distress.  Although not specified, the Court construes these claims to apply only to the individual plaintiff, Asfour.

To state a claim for negligent infliction of emotional distress, a complaint must allege "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case."  *Payton v. Abbott Labs,* 386 Mass. 540, 557 (1982).

The complaint does not allege that any action by the bank caused physical harm manifested by objective symptoms.  *See Surabian v. HSBC Bank USA, NA*, 2012 WL 1035235, at *3 (D. Mass. Mar. 26, 2012).  The physical distress discussed in the complaint is attributed to Asfour's illness, not the actions of the bank.  Accordingly, the complaint fails to state a claim for negligent infliction of emotional distress.

A claim for intentional infliction of emotional distress does not require an allegation of physical harm.  To state such a claim, a complaint must allege (1) that the defendant either intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct caused the plaintiff emotional distress; and (4) that the emotional distress was severe and of a nature that no reasonable person could be expected to endure it.  *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976).  Conduct is "extreme and outrageous" only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987) (quoting Restatement (Second) of Torts § 46).

Here the complaint falls far short of alleging extreme and outrageous conduct.  As a general matter, "[c]ourts have recognized that '[w]hile home foreclosure is a terrible event and likely fraught with unique emotions and angst, foreclosures, even ones that may involve improper conduct, do not readily go beyond all possible bounds of decency.'"  *Payton v. Wells Fargo Bank, N.A.,* 2013 WL 782601, at *4 (D. Mass. Feb. 28, 2013) (quoting *Alvarez v. U.S. Bank N.A.*, 2012 WL 2394680, at *9 (D. Mass. June 22, 2012).  The complaint alleges that defendant caused him "extreme emotional distress by ignoring the many letters and requests . . . for assistance during his extreme illness."  Compl. ¶ 49.  The loan has been in default since at least 2012, before Asfour contracted his illness.  As defendant attempted to foreclose on the property, Asfour provided defendant with multiple documents concerning his health condition.  Defendant did not respond to these many communications and eventually denied his request for a modification.  Defendant's alleged lack of response during the extended period of time that Asfour lived in the property without making loan payments does not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress.

Therefore, Count Five will be dismissed.

## F.      Count Six:  Massachusetts Consumer Protection Act

Count Six alleges a claim for a violation of Mass. Gen. Laws ch. 93A.  Presumably, the complaint intends to allege this violation under section 9, the provision that applies to consumers, because there is no allegation that any interaction occurred between defendant and PBR "in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 11.

A plaintiff alleging a claim under Mass. Gen. Laws ch. 93A, § 9 is required to provide a written demand for relief to the potential defendant no less than thirty days before filing suit.  Mass. Gen. Laws ch. 93A, § 9(3).  This demand requirement "is not merely a procedural nicety,

but, rather, 'a prerequisite to suit'" and "must be alleged in the plaintiff's complaint." *Rodi v. S. New Eng. Sch. of Law,* 389 F.3d 5, 19 (1st Cir. 2004) (quoting *Entrialgo v. Twin City Dodge, Inc.,* 368 Mass. 812 (Mass. 1975)).

The complaint fails to allege that plaintiffs sent a demand letter.  Instead, in their opposition to defendant's motion to dismiss, plaintiffs state that "counsel is presently sending a Chapter 93A demand letter to Defendant's counsel that can retroactively satisfy the requirement."  The demand requirement exists "to encourage negotiation and settlement of claims arising from allegedly unlawful conduct and to allow the defendant to limit the damages a plaintiff might recover by making a reasonable offer of settlement." *Moynihan v. LifeCare Ctrs. of Am., Inc.,* 2003 WL 22717663, at *1 (Mass. App. Ct. 2003).  The complaint does not allege that a demand letter was sent prior to the commencement of this action.  Accordingly, Count Six will be dismissed.

### G.       Count Seven:  Declaratory Judgment

Count Seven alleges a claim for declaratory judgment.  Plaintiffs have not established that defendants have infringed their rights under any of their substantive legal theories. Accordingly, Count Seven will be dismissed.

### III.    Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED.  This matter is hereby dismissed under Fed. R. Civ. P. 12(b)(6).

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated:  December 23, 2016                    United States District Judge